IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARK JESS ROBERTS,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>NATHAN J. CURTIS, Sevier County Sheriff,<br><br>　　　　　　　　　　Respondent. | **MEMORANDUM DECISION and ORDER GRANTING STAY AND ABEYANCE**<br><br>Case No. 4:19-cv-63-DN<br><br>District Judge David Nuffer |

In this federal habeas corpus case, inmate Mark Jess Roberts, ("Petitioner") attacks his state convictions. 28 U.S.C.S. § 2254 (2023) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). The parties agree that Petitoner's claims are unexhausted. Respondent has moved to dismiss. Petitioner seeks a *Rhines* stay in order to present amended federal claims to the Utah Supreme Court, then return to federal court nearly four years after the federal Petition was originally filed. The court GRANTS Petitioner's motion and stays this action pending final resolution of Petitioner's state court proceedings.

**I. BACKGROUND**

In April 2014, a jury convicted Petitioner of three counts of first-degree felony rape of a child, two counts of first degree felony sodomy on a child, one count of first degree felony aggravated sexual abuse of a child, and one count of class A misdemeanor lewdness involving a child. Petitioner, represented by counsel, appealed the convictions, raising only issues of state law. (ECF No. 34-1.) The Utah Court of Appeals affirmed. *State v. Roberts*, 414 P.3d 962 (Utah App 2018) (ECF No. 34-2.) Petitioner filed a petition for certiorari which raised no federal issues

1

and cited no federal law. (ECF No. 4-7.) The Utah Supreme Court denied certiorari. *State v. Roberts*, 420 P.3d 703 (Utah 2018).

In January 2019, Petitioner's father, acting on behalf of Petitioner, retained the services of a Las Vegas, Nevada based non-profit, the National Post-Conviction Project ("NPCP") to assist with Petitioner's collateral challenges to his convictions. (ECF No. 24-7, at 1.) NPCP agreed to draft pleadings on behalf of Petitioner, but not to full representation. The one-page retainer agreement begins "I, [Petitioner] and/or my authorized representative, Greg Roberts [Petitioner's father] herby [sic] authorize [NPCP] to research and prepare a Client Evaluation ("CE"), on our behalf including the preparation of all post-conviction *pro se* pleadings at the state and federal district court level, as determined necessary by NPCP." *Id.* The next paragraph reiterates the limited nature of the agreement: "I/we understand that we are NOT represented by counsel for any legal proceedings including court appearances or the filing of pleadings… NPCP has NOT provided me with legal advice and this CE Contract does not create an attorney-client relationship." *Id*. (emphasis in original.) Petitioner agreed to "keep NPCP informed of any new developments in [his] case and [his] location at all times." *Id.* When Petitioner, appearing *pro se*, received documents from the courts, he was expected to forward copies of the documents to NPCP for the preparation of any necessary responses. *See* ECF No. 24-10. According to Petitioner's father, he did not disclose the precise terms of the NPCP contract to Petitioner. (ECF No. 24-14, at 3.) Instead, Petitioner's father "merely told him, over the phone, that [he] had found an attorney to represent [Petitioner] in his post-conviction proceedings." *Id*.

On May 10, 2019, a "*pro se*" petition (prepared by NPCP) seeking relief under the Utah Post Conviction Remedies Act ("PCRA") was filed on behalf of Petitioner in the state district court. (ECF No. 34-8, at 1.) The petition argued that (1) the evidence at trial was insufficient for

2

a conviction; (2) Petitioner was actually innocent; and (3) Petitioner had received ineffective assistance of counsel, all in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. Both the petition and its associated certificate of mailing contained a typed digital signature purporting to be Petitioner's. (*Id*. at 19.) The Certificate of Mailing stated that "[Petitioner] personally handed to a corrections officer copies of my PCRA for deposit into the United States Mail, postage thereupon fully pre-paid." (*Id.* at 20.) However, Petitioner contends that he never had the opportunity to review the PCRA petition, nor did he personally authorize NPCP to file it on his behalf. *See, e.g.,* ECF No. 43, at 10. ("[NPCP] signed [Petitioner's] name and filed the petition without his knowledge or consent.")

Meanwhile, on August 19, 2019, with the state proceedings still ongoing, NPCP filed a "*pro se*" petition ("Petition") in this court. (ECF No. 1, at 1.) Petitioner has acknowledged that he authorized his digital signature on the document, despite not having reviewed the document prior to filing. (ECF No. 24, at 3.)

On September 9, 2019, the state court ordered Petitioner to amend his PCRA petition because the original petition had impermissibly comingled actual innocence and ineffective assistance of counsel claims in violation of the PCRA and because the petition failed to allege sufficient facts to support his claims. (ECF No. 34-9, at 1-3.) On October 22, 2019, two petitions, prepared by NPCP, were filed on behalf of Petitioner to comply with the separate pleading requirements of the PCRA. (ECF No. 34-10; ECF No. 34-11.). Both petitions appear to contain handwritten signatures superimposed over typed digital signatures. *See* ECF No. 34-10, at 19; ECF No. 34-11 at 34.

On June 2, 2020, the Utah district court denied both PCRA petitions and entered judgment against Petitioner. *Roberts v. Curtis*, Case No. 190903768 (Utah 3rd Dist. Jun. 2, 2020) (ECF No. 34-14, at 2.) Petitioner appealed. *See*, ECF No. 24-12.

On August 21, 2020, Respondent filed a motion to dismiss the federal Petition. (ECF No. 4.) Respondent's motion was served on Petitioner at the Sevier County Jail via U.S. Mail. (ECF No. 4, at 12.) Approximately one month later, neither Petitioner's father, nor NPCP were aware of the motion to dismiss. On September 18, 2020, Petitioner's father emailed NPCP informing them that "we haven't received anything from the courts or the prosecutor but as you requested we will forward anything and everything we receive just as soon as we get it." (ECF No. 24-13.) Three days later, NPCP responded to Petitioner's father confirming that they had not "received or seen any response from the courts at this time either." *Id*. No response to the motion to dismiss was filed.

On October 19, 2020, this court issued an order to show cause why the Petition should not be dismissed for Petitioner's failure to respond to the motion to dismiss. (ECF No. 5.) "Towards the end of 2020" Petitioner forwarded to his father documents Petitioner had received from the courts. (ECF No. 24-14, at 3.) According to Petitioner's father, the documents included an order from this court to respond. *Id*. Petitioner's father forwarded the documents to NPCP. *Id*. NPCP "stopped responding to [Petitioner's father's] phone calls and emails, and there were many." *Id.* at 4. No response to the order to show case was filed.

On December 9, 2020, the Utah Court of Appeals summarily affirmed the dismissals of the state petitions. *Roberts v. Curtis*, Case No 202000541-CA (Utah Ct. App. Dec. 9, 2021) (ECF No. 34-16, at 1.) Neither NPCP nor Petitioner filed a petition for certiorari to the Utah Supreme Court. The statutory period to file a petition for certiorari for the dismissal of the state petitions

4

expired on or around January 8, 2021. *See* Utah R. App. P. 48(a); *see also*, Utah Code Ann. 20A-1-104. The period to request an extension for good cause or excusable neglect expired on or around February 8, 2021. *See* Utah R. App. P. 48(e)(2).

Meanwhile, on January 12, 2021, after nearly seventeen months without direct contact from Petitioner and nearly two months after ordering Petitioner to show cause why his case should not be dismissed for failure to prosecute, this court dismissed the federal Petition. (ECF No. 6.) Petitioner filed *pro se* notice of appeal dated January 20, 2021. (ECF No. 10-1.)

By January 25, 2021, the Utah State Bar had suspended the license of the Utah-based attorney supervising Petitioner's case on behalf of NPCP for non-payment of dues. *See* ECF No. 24-8, at 11.

Petitioner obtained new counsel. Petitioner's current counsel filed a notice of appearance in this court on January 26, 2021. (ECF No. 13.) On March 11, 2021, Petitioner's counsel filed a motion to vacate the dismissal of the federal Petition under Rule 60(b) of the Federal Rules of Civil Procedure for mistake, inadvertence or excusable neglect. (ECF No. 24.) This court eventually granted Petitioner's Rule 60(b) motion on July 28, 2022. (ECF No. 32.)

On June 30, 2021, Petitioner's counsel filed a motion to set aside the dismissal of the state petitions under Rule 60(b) of the Utah Rules of Civil Procedure. (ECF No. 43-6, at 4.) Petitioner argued that NPCP had unethically ghost-written all the papers in the PCRA proceedings and filed them without Petitioner's consent. *Id.* On November 8, 2021, the state court denied Petitioner's 60(b) motion, noting that although federal courts condemn the practice of undisclosed ghost-writing on behalf of *pro se* litigants, Utah explicitly allows it. (ECF No. 43-6, at 12 (citing Utah State Bar Ethics Advisory Opinion 08-01).) The court also reasoned that although the ministerial act of inserting Petitioner's digital signature and filing the purportedly *pro se* pleadings was

misleading, it did not meet the standard for gross negligence necessary to set aside the dismissal under Utah law. (ECF No. 43-6, at 12 (quoting *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶35 ("While negligence generally connotes the failure to observe due care, gross negligence and recklessness are the failure to observe even slight care.")).)

On September 12, 2022, in this court, Respondent filed a second motion to dismiss the Petition. (ECF No. 34.) Respondent argued that the Petition must be dismissed because all of Petitioner's claims are procedurally defaulted, and Petitioner has failed to establish cause and prejudice to excuse the default. (ECF No. 34, at 16.) In response, Petitioner concedes the procedural default, but proposes to amend the complaint and asks the court for a stay and abeyance in order to exhaust the claims by invoking Petitioner's right to petition to the Utah Supreme Court for habeas corpus under the Utah Constitution and Utah Rule of Appellate Procedure 19. (ECF No. 43, at 37-38.) Respondent counters that the stay and abeyance mechanism has only been applied to "mixed petitions" (containing both exhausted and unexhausted claims) but none of the claims in the Petitioner have been exhausted. (ECF No. 44, at 4.) Respondent further argues that Petitioner's claims are irretrievably defaulted because no procedural mechanism remains through which Petitioner could now exhaust his claims. (*Id*. at 6.)

## II. LEGAL FRAMEWORK

Federal courts have discretion to issue a stay and hold a case in abeyance to allow Petitioner to return to state court to exhaust the unexhausted claims. *Rhines v. Weber*, 544 U.S. at 276. However, the exercise of discretion to grant a stay and abeyance must be "compatible with AEDPA's purposes." *Id*.

> Stay and abeyance, if employed too frequently, has the potential to undermine [the] twin purposes [of the AEDPA]. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the

6

> federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition."

*Rhines v. Weber*, 544 U.S. 269, 277. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). A diminution of statutory incentives to proceed first in state court would also increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce. *Duncan v. Walker*, 533 U.S. 167, 180 (2001). Nevertheless, the Supreme Court has counseled that it would "likely" be an abuse of discretion "to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

A "mixed petition" is one that contains both exhausted and unexhausted claims. *See Wood v. McCollum*, 833 F.3d 1272, 1273 (2016). The Tenth Circuit has held that a *Rhines* stay is available to a petitioner who presents an "unmixed" petition, meaning a petition wholly comprised of unexhausted claims, if the petitioner can meet the requirements for a mixed petition under *Rhines*. *Doe v. Jones*, 762 F.3d 1174, 1181 (10th Cir. 2014).

The standard for good cause for failure to exhaust in the context of a *Rhines* stay is lower than the standard for good cause to excuse a procedural default. See *Hand v. Utah*, No. 2:17-cv-365-JNP, 2019 U.S. Dist. LEXIS 79489, *4. A potentially meritorious claim as one that is not "plainly meritless." *Rhines*, 544 U.S. at 277. The Utah Supreme Court has held that a petitioner

7

may file a successive petition that would otherwise be procedurally barred by the PCRA by showing:

> (1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in a conviction, . . . (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ.

*Gardner v. Galetka*, 2007 UT 3, ¶ 18, 15 P.3d 968 (Utah) (quoting *Hurst v. Cook*, 777 P.2d 1029, 1037 (Utah 1989). The Utah Supreme Court has clarified that the list of good cause exceptions is not exhaustive. *Id*. (citing *Candelario v. Cook*, 789 P.2d at 712).

### III. ANALYSIS

Petitioner requests a stay and abeyance to exhaust proposed amended claims relating back to the unexhausted claims in his unmixed federal petition. Petitioner attributes his failure to file a petition for certiorari to review the claims presented to the Utah Court of Appeals to the "ineffective assistance of both his appellate and post-conviction counsel, as well as abandonment by post conviction [sic] counsel." (ECF No. 43, at 24.)

The AEDPA does not deprive this court of discretion to issue such a stay. *Rhines v. Weber*, 544 U.S. at 276. However, it does circumscribe the exercise of that discretion. *Id.* In *Rhines,* the United States Supreme Court remarked that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The Tenth Circuit has held that a petitioner may be entitled to a *Rhines* stay even if his petition is "unmixed." *Doe v. Jones,* 762 F.3d at 1181. On the other hand, the Supreme Court cautioned that

> Stay and abeyance, if employed too frequently, has the potential to undermine [the] twin purposes [of the AEDPA]. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

*Rhines v. Weber*, 544 U.S. 269, 277.

The risk of undermining the "twin purposes" of the AEDPA is especially pronounced where Petitioner proposes to return to the state courts to exhaust a slate of amended claims four years after his Petition was originally filed. A policy allowing such practice could potentially diminish "statutory incentives to proceed first in state court" and "increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

Nevertheless, this court will follow the Supreme Court's admonition and grant the stay if Petitioner can satisfy the three *Rhines* standards: (1) good cause for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

### A. Good Cause for Failure to Exhaust

The Supreme Court did not set a clear standard for good cause for failure to exhaust in *Rhines*. But subsequent decisions suggest the standard may be lower than good cause to excuse a procedural default. In *Pace v. DiGuglielmo*, the Court suggested that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Some courts have applied a stringent standard for good cause, similar to that which would be applied to excuse a procedural default. *See, Hand v. Utah*, 2019 U.S. Dist. LEXIS 79489, *1 (citing *Carter v. Friel*,

415 F. Supp. 2d 1314, 1319 (D. Utah 2006)); *Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005); *Pierce v. Hurley*, No. 2:05-CV-392, 2006 U.S. Dist. LEXIS 1507, 2006 WL 143717, at *8 (S.D. Ohio Jan. 18, 2006), report and recommendation adopted, No. 2:05-CV-392, 2006 U.S. Dist. LEXIS 99946, 2006 WL 1132917 (S.D. Ohio Apr. 24, 2006)). Other courts have employed a lower good cause standard in the context of a *Rhines* stay. *Id.* at 3-4 (citing *Dixon v. Baker*, 847 F.3d 714, 721-22 (9th Cir. 2017); *Kell v. Crowther*, No. 2:07-CV-00359-CW, 2017 U.S. Dist. LEXIS 190680, 2017 WL 5514173, at *2 (D. Utah Nov. 16, 2017); *Lafferty v. Crowther*, No. 2:07-CV-00322-DB, 2015 U.S. Dist. LEXIS 154113, 2015 WL 6875393, at *4 (D. Utah Oct. 30, 2015)). After surveying the precedents, this court concluded "that the less stringent standard adopted by the Ninth Circuit is better reasoned than the older district court rulings that adopted a high bar for the good cause requirement to issue a *Rhines* stay." *Hand v. Utah*, 2019 U.S. Dist. LEXIS 79489, *4.

In this case, responsibility for Petitioner's failure to exhaust his federal claims is murky. Petitioner's father secured limited scope representation on behalf of Petitioner, but failed to disclose the precise terms of that representation. The terms of the representation are objectionable in federal courts, but Utah courts are apparently more tolerant. (ECF No. 43-6, at 15 (citing Utah State Bar Ethics Advisory Opinion 08-01).) Petitioner was responsible to forward copies of court filings to NPCP, but on at least one occasion, appears to have neglected that responsibility. Petitioner, or at least his father, had reason to believe that NPCP was not actively engaged with his case. (ECF No. 24-14, at 4 ("[NPCP] stopped responding to my phone calls and emails, and there were many").) By the time Petitioner secured new counsel, the period to file a petition for certiorari to exhaust his claims in state courts had expired, but there was still time to request an extension for good cause or excusable neglect. *See* Utah R. App. P. 48(e)(2). Instead,

Petitioner's new counsel filed a motion for relief from judgment just three days after the period to request an extension in the state courts had expired. (ECF No. 24.)

Petitioner had no right to counsel in his post-conviction proceedings, and his agents' negligence is typically attributable to him. The series of events that led to his failure to exhaust his federal claims in state courts therefore, may not meet the standard for good cause to excuse a procedural default. However, Petitioner does satisfy the lower standard used by this court and others for good cause in the context of a *Rhines* stay. Therefore, Petitioner has meet the first of the three *Rhines* criteria.

### B. Claims are Potentially Meritorious

In *Rhines*, the Supreme Court referred to a potentially meritorious claim as one that is not "plainly meritless." *Rhines*, 544 U.S. at 277. Respondent argues that Petitioner's claims are not potentially meritorious because there remains no viable procedural avenue by which Petitioner could exhaust them in state courts. Respondent contends that Petitioner's proposed amended claims will be rejected by the state courts on independent and adequate procedural grounds under the PCRA because the claims could have been but were not raised in a previous request for post-conviction relief. (ECF No. 34, at 21 (citing Utah Code Ann. § 78B-9-106(1)(d).) Petitioner does not contest that the Utah Supreme Court now lacks jurisdiction to consider a petition for certiorari of his state petition. Nor does Petitioner contest that his proposed claims would be barred under the PCRA. Instead, he argues that he may invoke the Utah Supreme Court's constitutional writ authority to consider a petition, and to the extent the PCRA is interpreted to limit that authority, the procedural bars of the PCRA are unconstitutional. (ECF No. 42, at 40.) Further, Petitioner argues that in "unusual circumstances," meaning circumstances in which "an obvious injustice or substantial and prejudicial denial of a constitutional right has occurred,"

11

Utah courts may entertain a claim irrespective of whether it had been previously raised. (ECF No. 43, at 42.); *see also* Utah R. App. P. 19.

Petitioner relies on *Patterson v. State*, 2021 UT 52 to support his argument that he could exhaust his claims by a direct petition to the Utah Supreme court. In *Patterson*, the Utah Supreme Court rejected a petitioner's application to the Utah Supreme Court's constitutional writ authority. The petitioner argued that he could "invoke the court's constitutional writ power outside the PCRA." *Patterson v. State*, 2021 UT 52, ¶ 3. He also argued that "to the extent the PCRA is interpreted to constrain this court from exercising its constitutional writ authority, the PCRA is unconstitutional." *Id*. The Utah Supreme Court rejected these arguments and determined that the PCRA provides the "sole legal remedy" for post-conviction petitions in Utah because the Utah Supreme Court had adopted Utah Rule of Civil Procedure 65C, "which mirrors the PCRA," to regulate constitutional habeas proceedings. *Patterson v. State*, 2021 UT 52, ¶ 182 (citing *Gardner v. State*, 2010 UT 46 ¶ 91, 234 P.3d 1115). Therefore, the PCRA procedural bars also apply to the Utah Supreme Court's constitutional writ authority. *Id.* ("After [the Utah Supreme Court] adopted Rule 65C, the procedural bars and exceptions to those bars were the same, whether they were housed in statute or court rule.")

However, Utah Courts have allowed "good cause" exceptions to the procedural bars of Rule 65C and the PCRA. "Qualifying for an exception to the procedural bars of rule 65C would require the same showing as an exception to the procedural bar under the PCRA." *Patterson,* at ¶ 218. The Utah Supreme Court has held that a petitioner may file a successive petition that would otherwise be procedurally barred by the PCRA by showing:

> (1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in

> a conviction, . . . (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ.

*Gardner v. Galetka*, 2007 UT 3, ¶ 18, 15 P.3d 968 (Utah) (quoting *Hurst v. Cook*, 777 P.2d 1029, 1037 (Utah 1989). The Utah Supreme Court has further clarified that the list of good cause exceptions is not exhaustive. *Id*. (citing *Candelario v. Cook*, 789 P.2d 710, 712 (Utah 1990)).

This court declines to presuppose how the Utah Supreme Court will apply its own precedents to Petitioner's facts. But, there is a possibility that the Utah Supreme Court could conclude that Petitioner's circumstances qualify for one of the enumerated or unenumerated good cause exceptions to the procedural bar against successive petitions under the PCRA. Thus, Petitioner's unexhausted claims are not plainly meritless. Therefore, Petitioner has satisfied the second requirement for a *Rhines* stay.

### C. No Indication of Intentionally Dilatory Tactics

As for the third *Rhines* standard, Petitioner has limited incentive to delay this proceeding, because the delay would forestall the relief he seeks. Nor does Respondent contest that while Petitioner has engaged in dilatory tactics, Petitioner's failure to prosecute his case more than a year after filing his Petition is likely the result of negligence and his convoluted relationship with NPCP, rather than an intentional strategy to delay. This court sees no indication that Petitioner has engaged in intentionally dilatory litigation tactics. Therefore, Petitioner has satisfied the third *Rhines* standard.

### V. CONCLUSION

Petitioner has established all three of the requirements for a *Rhines* stay. Petitioner has shown good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and he has not engaged in intentionally dilatory litigation tactics. The court, therefore, stays the proceedings in this case. Petitioner will file a petition to exhaust his federal claims in state courts

within thirty days. The court orders Petitioner to notify the court within 30 days after the state proceedings have reached a conclusion.

      **IT IS THEREFORE ORDERED** that the Petitioner's motion for stay and abeyance is **GRANTED**.

      DATED this 2nd of September, 2023.

                      BY THE COURT

                        JUDGE DAVID NUFFER
                        United States District Court